# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6029 | **DATE** | 9/12/2002 |
| **CASE TITLE** | Jerry J. Massaro v. Quality Synthetic Rubber, Inc. et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions for Partial Summary Judgment and Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion Order, the Nationwide Defendants' motion for summary judgment [36-1] is GRANTED in its entirety. The QSR/MED Defendants' motion for partial summary judgment [33-1] is GRANTED in part and DENIED in part. Summary judgment is GRANTED in favor of Defendants MED, Skuza, and Kaiser on all counts, and in favor of the QSR on Counts I, II, IV, V, VIII, IX, XIV, and XV. Summary judgment is DENIED as to QSR on Counts III, VI, VII, X, XI, and XII. In sum, QSR remains as the only defendant and the remaining counts against it are III, VI, VII, X, XI, XII, and XIII.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **6** | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| X | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | date docketed | | **50** |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| | mds(lc) | courtroom deputy's initials | | **9-12-02** date mailed notice | | |
| | | | Date/time received in central Clerk's Office | *Parrb* mailing deputy initials | | |

| | |
|---|---|
| JERRY J. MASSARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 01 C 6029 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| QUALITY SYNTHETIC RUBBER, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry J. Massaro ("Massaro") brings a 15-count complaint against Defendants

Quality Synthetic Rubber, Inc. ("QSR"), Medical Elastomer Development, Inc. ("MED"), Dennis

E. Kaiser ("Kaiser"), and Donald J. Skuza's ("Skuza") (collectively, the "QSR/MED

Defendants") and Defendants Nationwide Life Insurance Company ("Nationwide Life") and

Nationwide Pension Services ("NPS") (collectively, the "Nationwide Defendants") under ERISA

and various state laws for the alleged failure to perform duties required by contract and an

ERISA plan. Before this Court are the QSR/MED Defendants' motion for partial summary

judgment and the Nationwide Defendants' motion for summary judgment. For the following

reasons, the QSR/MED Defendants' motion for partial summary judgment is GRANTED in part

and DENIED in part and the Nationwide Defendants' motion for summary judgment is

GRANTED in its entirety.

-1-

# I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion;

"there must be evidence on which the jury could reasonably find for the [non-movant]."
Anderson, 477 U.S. at 250.

## II.  Factual Background[1]

*The Parties*

QSR and MED are Ohio corporations located in Twinsburg, Ohio, and they engage in the business of manufacturing precision, custom-molded products.  Kaiser is an individual who is a shareholder and officer of both QSR and MED.  Skuza is an individual who is a shareholder and officer of both QSR and MED.  Nationwide Life provided the group annuity contracts that offered a selection of mutual funds and NPS provided limited third-party administrative services for QSR's 401(k) Plan.  Massaro, an Illinois resident, is a former employee of QSR.[2]  Aside from the fact that QSR and MED have the same owners, directors, and officers (Kaiser and Skuza), the two corporations have separate employees, separate payrolls, separate business records, and different Employer Identification Numbers.

---

[1] Unless otherwise indicated by a showing of disagreement, the facts listed below are either undisputed or deemed admitted by one of the parties because that party's response pursuant to Local Rule 56.1 either 1) inappropriately denied the material fact by citing to an exhibit that agreed with the statement of material fact, or 2) was unsupported by proper citation that specifically referred to the record, affidavits, or other supporting materials relied upon for disagreement, as required by Local Rule 56.1, which this Court strictly enforces.  Statements and responses that are not supported by the record, or that are supported with citations to entire affidavits are disregarded.  See Johnson v. Indopco, Inc., 887 F.Supp. 1092, 1095 (N.D. Ill. 1995).  "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes . . . ."  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994).

[2] According to Kaiser, Massaro was also a former employee of MED.  Massaro, however, claims that he was not an MED employee.

From February 1994 to approximately March 1996, Massaro provided sales services to QSR as an independent contractor through Barmascur International, Inc., of which Massaro was a principal shareholder. As an independent contractor, Massaro was not eligible to receive, and did not receive, QSR employee benefits. On February 1, 1996, Massaro entered into a Sales Agreement by which he provided independent contractor sales representative services to MED. The Sales Agreement did not require Massaro to solicit orders for MED over the entire Untied States.

In March 1996, Massaro was offered employment with Helix Medical, Inc. ("Helix"), a manufacturer of custom silicone rubber molded and extruded components and assemblies. At the time Massaro was offered employment with Helix, Helix did not have a company-paid retirement plan, but had a 401(k) plan in which Massaro could participate as an employee of Helix. Following Massaro's receipt of the offer of employment from Helix, on or around April 1, 1996, Massaro informed the QSR/MED Defendants of his decision to accept Helix's employment offer and he informed them that he would no longer be able to provide sales services to QSR. According to the QSR/MED Defendants, Massaro informed Kaiser that he would stop performing independent contractor sales representative services for MED if QSR did not enter into an employment agreement with Massaro prepared by Massaro and his attorneys ("Employment Agreement"). According to Massaro, Kaiser thereafter told Massaro that Kaiser would like Massaro to accept employment with QSR and be responsible for the sale and marketing of MED products. Massaro told Kaiser that as an employee of Helix, Massaro would be eligible to participate in, and receive benefits associated with, Helix's 401(k) plan. Massaro

further stated that he was 46 years old and that, at this stage of his life, it was important to him to have a retirement plan, a pension plan, and a profit sharing plan. Kasier then told Massaro that, as an employee of QSR, Massaro would receive all the benefits provided to other QSR employees, including without limitation, an employee directed salary deferral 401(k) savings plan by mean of which Massaro could direct a percentage of his salary on a tax-deferred basis and receive employer contributions ("401(k) Plan"), a company paid retirement plan ("Retirement Plan"), a profit sharing program pursuant to which Massaro would be paid monthly bonuses ("Profit Sharing Program"), and paid vacation. In connection with the Profit Sharing Program, Kaiser told Massaro that "there are a lot of people walking around here that are getting an extra thousand bucks a month." Kaiser told Massaro that he and his family also were eligible for the QSR paid medical/dental plan. Kaiser told Massaro that the benefits Massaro would receive from QSR would far exceed and be more advantageous than those benefits that Helix offered him.

*Massaro's Employment and Benefits with QSR*

In any event, on April 4, 1996, Massaro and QSR executed the Employment Agreement with no changes to the document prepared by Massaro and his attorneys. Art. I, Sec. 1 and Art. IV, Sec. 3(a) of the Employment Agreement provide for a five-year term ending on April 1, 2001, unless, on the request or with the consent of QSR, Massaro continued his employment beyond that date. Art. I, Sec. 1, and Art. III, Sec. 1 of the Employment Agreement provides for payments to Massaro if there is termination of the Employment Agreement. Art. III, Sec. 3 of the Employment Agreement provides in part that the Employment Agreement: is the entire agreement between Massaro and QSR with respect to the terms and conditions of Massaro's

employment and supersedes all prior agreements; and that no amendment or modification of the Employment Agreement shall be effective unless in writing executed by Massaro and by QSR's President. Art. II, Sec. 7 of the Employment Agreement provides that Massaro shall receive benefits as may be due him under QSR's employee benefit programs. The Employment Agreement does not state expressly that Massaro will be eligible for QSR's paid medical, dental and prescription services used by Massaro and his family.

Shortly after Massaro began his employment with QSR, Massaro received a copy of the QSR Employee Handbook dated 4/1/92 ("Handbook"). QSR subsequently revised its Handbook in 1997 ("Revised Handbook"). The Revised Handbook states that a company-paid retirement plan is available for QSR employees. Kaiser never told anyone at QSR or at MED that Massaro was not entitled to any of the benefits or programs reflected in the QSR Handbook or the MED Handbook. The Handbook dated 4/1/92 provides that QSR provides a paid medical/dental plan that covers medical, dental and prescription services used by the employee and his/her family. Massaro chose not to participate in the QSR medical/dental plan and QSR agreed to pay Massaro $250 per month towards his cost of a health plan.

During Massaro's employment with QSR, he received the following benefits, which were not stated expressly in his Employment Agreement but were stated in the QSR Handbook: a paid $10,000 Term Life Insurance policy during his employment; paid holidays while he was an employee; and paid vacation while he was an employee. Additionally, while the Employment Agreement states Massaro is to be paid his base salary in two weekly installments, Massaro's pay periods and pay day were weekly and on Fridays.[3] There is no writing signed by Massaro and the

_____

[3] QSR sent Massaro's checks to him in Illinois.

President of QSR that memorializes this change to the Employment Agreement. The QSR Handbook states that pay periods and pay day for QSR employees are weekly and on Fridays.

Massaro, as a QSR employee, performed duties as an outside sales representative from April 4, 1996 to April 1, 2001. Massaro performed his duties outside of QSR's Twinsburg, Ohio location. He controlled and directed the performance of his own work, but reported to Phil Smith, who was the Chief Operating Officer. QSR currently has, and has only had, one employee retirement benefit plan.[4] It initially consisted of an employer discretionary contribution of company profits. Because of business needs, no employer discretionary contribution of company profits was made after the 1980s. A 401(k) feature was added to the QSR employee retirement benefit plan in 1993-94.[5] Kaiser testified that the "retirement plan" referred to in the Employee Handbook is not the same as the 401(k) Plan. During the Massaro's employment with QSR, contributions from non-vested plan participants/former employees were distributed on a pro-rata basis to the employer discretionary contribution accounts of participants in the QSR employee retirement benefit plan, including, without limitation, Massaro. The dollar amount distributed to each of these participants was small.

---

[4] Massaro disputes that QSR has had only one retirement plan, and he attaches a QSR Employee Handbook from another year for support. The information in that handbook, however, is exactly the same as the information in the handbook to which the QSR/MED Defendants cite and does not indicate that a different retirement plan ever existed.

[5] The Nationwide Defendants assert that QSR developed a 401(k) plan for its employees in September 1981. The date the plan commenced is irrelevant, however, for the purposes of this motion for summary judgment on the liability issue.

*Administration of QSR's Employee Benefit Plan(s)*

MED has never been the administrator or a trustee of an ERISA benefit plan. At all relevant times, QSR was the plan administrator to QSR's 401(k) plan, and Kaiser and Skuza were the trustees for the Plan. Neither Kaiser nor Skuza has ever participated in the administration of the QSR employee retirement benefit plan, nor have they ever provided investment advice to the plan beneficiaries. On or about January 1, 1990, QSR, as the plan administrator, entered a Service Agreement with NPS to provide limited third party administrative ("TPA") services under the Plan. NPS, an affiliate of Nationwide Life, ultimately provided the limited TPA services upon Nationwide Life's behalf. Among other services, the Service Agreement provided that NPS would (1) track, maintain and report contributions and investment performance of the individual participants' accounts; (2) at the participants' instructions, transfer participants' funds into the various mutual funds offered by Nationwide Life; and (3) complete and file certain forms to governmental agencies such as the Internal Revenue Service ("IRS"). Pursuant to the Service Agreement and upon request by the plan administrator, NPS provided enrollment kits, reports and semi-annual statements of accounts to QSR for the individual participants. The enrollment kits included summary plan descriptions, Enrollment and Payroll Deduction Forms, and Beneficiary Designation Forms.[6] The Nationwide Defendants assert that QSR was responsible, as plan administrator, for dispersing the enrollment kits to the plan participants, and they attach copies of correspondence between NPS and QSR

---

[6] Massaro disputes that the Service Agreement expressly provides for those duties. While Exhibit J to the Bigart Affidavit does not state the contents of the Enrollment Kits, it states "Enrollment Kits (with Payroll authorization and Beneficiary Designation forms)"; that letter does not establish that the Enrollment Kits *only* contained Payroll authorization and Beneficiary Designation forms.

regarding the disbursal of enrollment kits. Massaro disputes that the exhibits establish that QSR was responsible for dispersing the kits. At all times, the Nationwide Defendants communicated with QSR, as plan administrator, regarding the particulars of the Plan. QSR, in turn, communicated with the Plan participants. If/when Massaro called NPS with a question regarding the Plan, he was directed to contact QSR as the plan administrator.

Effective August 1, 1990, the Trustees of the 401(k) plan contracted with and directed Nationwide Life to invest the funds of the 401(k) plan into a group annuity contract and the Trustees selected a variety of mutual fund options to be offered to participants. Contributions to the Plan were then deposited with Nationwide and allocated to the funds selected by the participants. Any transactions under the Plan were processed by Nationwide pursuant to QSR's instructions. Neither of the Nationwide Defendants, however, had any discretion or authority to: (a) select (i) the specific mutual fund into which a participant invested his or her deferred compensation, or (ii) the percentages of the Plan funds directed to each mutual fund; and (b) determine eligibility for benefits under the Plan. QSR, as the plan administrator, had the sole authority under the Plan to determine eligibility for benefits. Massaro even described Nationwide Life's role as "just a service that transferred the funds in and out of mutual funds and money market funds and fixed funds." Effective May 1, 1996, QSR amended its 401(k) plan through the execution of the Adoption Agreement for Nationwide Life Insurance Company Basic Non-Standardized 401(k) Profit Sharing Plan and Trust ("Adoption Agreement"). The QSR Board of Directors executed the Adoption Agreement by Resolution on January 1, 1996. The Resolution and Adoption Agreement specifically identify QSR as the plan administrator and appointed Kaiser and Skuza as Trustees of the Plan. The Basic Plan bestowed upon QSR: "[the]

-9-

power and discretion to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan. Any such determination by Administrator shall be conclusive and binding on all persons."

NPS remained the TPA providing limited ministerial services and Nationwide Life remained the provider of the group annuity contract that offered the mutual funds options into which the Plan's funds were contributed. Participants were permitted to self-direct their deferred compensation. Massaro routinely took advantage of his ability to self-direct his investments. Neither of the Nationwide Defendants offered investment advice to Massaro. All written communication to Massaro concerning the Plan came from QSR as plan administrator, not the Nationwide Defendants. In fact, when Massaro called NPS for information about the Plan, NPS directed him to Vicki Horner, the representative of QSR, the plan administrator. Massaro informed the Nationwide Defendants that he was not getting the 401(k) plan documents from QSR. The Nationwide Defendants did not send him any 401(k) plan documents.

Effective January 3, 2000, QSR terminated the Service Agreement with Nationwide Life and NPS ceased performing the limited TPA services for the Plan. Massaro has never requested from either of the Nationwide Defendants that they release Massaro's funds in the Plan. Nor has QSR, the plan administrator, requested that the Nationwide Defendants release Massaro's funds.

*Disputes Concerning the ERISA Plan(s)*

Massaro testified that the 401(k) employee contribution and employer match amounts reported to him are correct, although he disputes the small amount--$2.87--of the employer contribution. During his employment with QSR, Massaro received money into the Employer Discretionary Contribution Account of his 401(k) benefit.

Massaro and the QSR/MED Defendants dispute the facts surrounding the monthly bonus. According to the QSR/MED Defendants, the monthly bonus that may be paid to some employees of QSR has never been and is not a retirement plan. The monthly bonus that may be paid to some employees of QSR is paid within approximately twelve to eighteen days after the close of the prior month. An employee who began work for QSR in April 1996, if that employee were eligible for the monthly bonus, would know or should have known before the end of May 1996 that he had not received a monthly bonus for April 1996.[7] The QSR/MED Defendants assert, and Massaro disputes, that non of the sales employees of QSR who are not or were not located in Twinsburg, Ohio (including, without limitation, Massaro) has ever been eligible for or received the monthly bonus. Although the QSR/MED Defendants assert that the QSR Handbook has never applied and does not apply to the employees of QSR who are not or were not located in Twinsburg, Ohio, Massaro received a Handbook shortly after execution of the Employment Agreement. Further, the QSR/MED Defendants point to the Handbook as the source providing the terms regarding Massaro's vacation pay. Specifically, the Handbook provided that vacation must be taken before December 31 of the same year and that an employee must take vacation to qualify for vacation pay. The Handbook provides that the policies, benefits, rules and regulations

---

[7] Massaro, however, disputes that he should have known before the end of May 1996 whether he received a monthly bonus for April 1996. He testifies that at no time was he told that these benefits were paid out the month following the month in which services were performed by the employee. Further, Massaro testifies that when he received his W-2 Wage and Tax Statement for 1996, he saw that the "Pension plan" box was checked and he believed that his profit sharing in the form of monthly bonuses was being deposited into the company-paid Retirement Plan that Kaiser had promised him as a direct employee of QSR. Massaro alleges he made numerous attempts to obtain information about the profit sharing program in the form of monthly bonuses, but that QSR never responded to those requests.

of QSR do not create express or implied contractual terms, and are subject to change unilaterally by the Company without notice.

Massaro's QSR W-2 wage statement for 1996 indicates that he has a pension plan, and his W-2 wage statements for 1998, 1999, and 2000 indicate that he has a pension plan and a deferred compensation plan. During his employment with QSR, Massaro received no Retirement Plan benefits and no Profit Sharing Program benefits. The Profit Sharing Program benefits were separate from and different than the employer discretionary contributions provided by QSR under the 401(k) Plan. Kaiser and Skuza were/are trustees of the 401(k) Plan. Massaro alleges, and the QSR/MED Defendants dispute, that he made repeated written and oral requests, but never received, copies of the plan documents for the 401(k) plan, the Retirement Plan, and the Profit Sharing Program. Kaiser has no idea who was responsible for sending out information concerning the 401(k) Plan and he never determined whether QSR or MED were sending out notices concerning the 401(k) Plan.

Kaiser sent Massaro a letter dated March 29, 2001 that confirmed the expiration of Massaro's Employment Agreement on April 1, 2001. On June 19, 2001, Massaro filed this action against the QSR/MED Defendants. On January 11, 2002, Massaro amended the complaint and added the Nationwide Defendants.

### III. Discussion

As to the QSR/MED Defendants, Massaro claims that they: (1) violated ERISA by failing to provide him with benefits due under the QSR 401(k) Savings and Profit Sharing Plan and Trust (the "401(k) Plan") (Counts I and II); (2) violated ERISA by failing to provide him with 401(k) plan documents in response to his written requests for the same (Count III); (3) violated

ERISA by failing to provide him with benefits due under the QSR company-paid retirement plan (the "Retirement Plan") (Counts IV and V); (4) breached their promise that Massaro would receive Retirement Plan benefits and are estopped from asserting that he is not a participant in and entitled to benefits under the Retirement Plan (Count VI); (5) breached the Employment Agreement between Massaro and the QSR/MED Defendants by failing to provide him with a retirement plan and the benefits associated therewith (Count VII); (6) violated ERISA by failing to provide him with benefits due under the QSR program that provided for the payment of monthly bonuses (the "Profit Sharing Program") (Counts VIII and IX); (7) breached their promise that Massaro would receive Profit Sharing Program benefits and are estopped from asserting that he is not a participant in and entitled to benefits under the Profit Sharing Program (Count X); (8) breached the Employment Agreement by failing to provide Massaro with a profit sharing program and the benefits associated therewith (Count XI); (9) defrauded Massaro (Count XII); (10) breached the Employment Agreement by failing to provide Massaro with his earned sales commissions (Count XIII); (11) breached the Employment Agreement by failing to provide him with thirty days written notice of termination and failing to pay him one year's base salary and one year's commissions based on the highest consecutive twelve months of his employment (Count XIV); and (12) violated the Illinois Wage Payment and Collection Act by failing to pay him his earned vacation (Count XV). As to the Nationwide Defendants, Massaro claims that they violated 29 U.S.C. § 1132(a)(1)(B) and (a)(3) when they, acting as alleged trustees or fiduciaries, allegedly denied Massaro benefits from QSR's 401(k) Plan (Counts I and II).

Each of the four QSR/MED Defendants move for summary judgment on all counts but Count XIII (earned but unpaid sales commissions), and MED moves for summary judgment on

Count XIII. Massaro agrees that summary judgment should be granted as to Counts IV and V. The Nationwide Defendants move for summary judgment on Counts I and II, which are the only counts against them.

As a preliminary matter, this Court addresses the QSR/MED Defendants' argument that Skuza and Kaiser are entitled to summary judgment in their individual capacities. The record establishes that Massaro never spoke with Skuza regarding the matters at issue in this case. Further, as to Kaiser's alleged representations to Massaro, officers of a corporation are not individually liable on a contract where there is no indication that the officer intended to be bound personally. Wottowa Ins. Agency, Inc. v. Bock, 472 N.E.2d 411, 413 (Ill. 1984). There is no indication that either Kaiser or Skuza intended to be bound personally in this case. Thus, the Court GRANTS summary judgment as to Defendants Skuza and Kaiser in their individual capacities on all counts. This Court now addresses each remaining count in turn.

A. Counts I and II - ERISA Claims for Benefits Due under the 401(k) Plan

Massaro alleges that the Defendants denied him benefits under the 401(k) Plan in violation of the 401(k) Plan provisions and ERISA, 29 U.S.C. § 1132(a)(1)(B). This claim arose out of an inadvertent transposition between the amounts of the employer and employee contributions on a Form 5550, 2000 Annual Return/Report of Employee Benefit Plan for the 401(k) Plan. The original form filed by QSR reflects that, in 2000, the employer contributed an amount of $692,302.00, while the employee contributed an amount of $207,390.00, and QSR made a discretionary Employer Profit Sharing Contribution to Massaro's account from 1997 to September 1, 2000 totaling only $2.67.[8] QSR filed an amended Form 5550, reflecting that the

_____

[8] Massaro submits inconsistent information about this amount. In his brief, he submits he only received $2.67, but in his deposition, he mentions that the figure was $2.87. For the

-14-

correct amount of employer contributions was actually $207,390.00. Massaro argues, that notwithstanding this correction, the discretionary Employee Profit Sharing Contribution appears to be too low and urges this Court to deny summary judgment on Counts I and II. In the alternative, Massaro requests that he be given 30 days to conduct discovery on this issue and that the Court stay Defendants' motion for summary judgment on Counts I and II. This Court disagrees.

Massaro is not claiming that the employer or employee contributions are incorrect. Rather, he argues that he still has a claim for ERISA benefits due under the 401(k) Plan (Count I) and a claim for equitable relief to enforce the 401(k) Plan (Count II) because he may not have received a sufficient employer *discretionary* contribution to his 401(k) Plan. It is undisputed, however, that the dollar amounts distributed to each of the participants under the discretionary employer contribution plan was small. It is further undisputed that no employer discretionary contribution of company profits was made after the 1980s. This Court therefore GRANTS summary judgment in favor of all the defendants on Counts I and II of the Amended Complaint.

Even if summary judgment were not granted as to QSR on Counts I and II, the Nationwide Defendants and MED are entitled to summary judgment as a matter of law. Under ERISA, a claim for denial of benefits cannot be brought against them as a third party administrator. 29 U.S.C. § 1132(d)(2) provides that: "any money judgment . . . against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this title." Generally, in a suit to recover benefits under an ERISA

_____

purposes of deciding this motion for summary judgment, however, the actual amount of the discretionary employer contribution is of no moment.

-15-

plan, the plaintiff may only bring suit against the Plan. Riordan v. Com. Edison Co., 128 F.3d 549, 551 (7th Cir. 1997); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996). Suits against employers, however, have been permitted when the employer is also the plan administrator, and the employer and the plan were otherwise closely intertwined. See Mein v. Carus Corp., 241 F.3d 581, 583 (7th Cir. 2001). The "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). In this case, because the Nationwide Life Defendants are not Massaro's employers, nor are they the plan administrator(s), they are entitled to summary judgment as a matter of law.[9] Similarly, Massaro testified, and the evidence overwhelmingly demonstrates, that Massaro was never an employee of MED, nor was MED ever an administrator or trustee of an ERISA benefit plan. Thus, Massaro failed to establish liability as to MED and MED is entitled to summary judgment as a matter of law on all counts.

*B. Count III - Claim for Failure to Provide Plan Documents*

During Massaro's employment with QSR, he allegedly made repeated oral and written requests to the Defendants for copies of the plan documents for the 401(k) Plan, the Retirement Plan, and the Profit Sharing Program. Despite these requests, QSR did not provide Massaro with copies of the plan documents. QSR bases its motion for summary judgment on this count on Massaro's citing to the wrong ERISA subsection. Count III of the Amended Complaint states:

---

[9] In his response, Massaro attempts to suggest that the Nationwide Defendants are liable under ERISA for failing to provide plan documents to him as required by this section. However, Count III of the Amended Complaint is Massaro's claim for failure to provide plan documents and he did not name the Nationwide Defendants on that count. As it is inappropriate for a plaintiff to attempt to amend his pleadings in a response to summary judgment, and as the deadline to amend the pleadings expired in December 2001, this Court grants summary judgment in favor of the Nationwide Defendants in its entirety.

"Against QSR for Violation of ERISA, 29 U.S.C. § 1132(a)(4) Failure to Provide Plan Documents." 29 U.S.C. § 1132(a)(4), however, is a subsection under "Persons empowered to bring a civil action," stating that an action may be brought "by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title." Sections 1024(b)(4) and 1132(c)(1) are the sections that cover the failure to provide plan documents. This Court will not grant summary judgment against a plaintiff for the plaintiff's counsel's mistake in citing to the incorrect ERISA section when, as here, the Amended Complaint adequately puts QSR on notice as to the conduct in question. Summary judgment, therefore, is DENIED as to Count III.

## C. Count VI - Promissory Estoppel Regarding Retirement Plan

In Count VI, Massaro claims that he reasonably relied to his detriment upon Kaiser's oral and written representations that Massaro was eligible to participate in the Retirement Plan, and that QSR is estopped from asserting that Massaro is not a participant in, and not entitled benefits under, an ERISA-governed (or, in the alternative, a non-ERISA) Retirement Plan.

QSR further argues that summary judgment should be granted on this count because Massaro *did* participate in the existing QSR employee retirement benefit plan that included an employer discretionary profit-sharing contribution feature and a 401(k) feature. As Massaro points out, however, he was told he would receive a company-paid retirement plan *separate and apart* from the QSR 401(k) Plan. Further, Kaiser testified that the "retirement plan" to which the QSR Handbook referred is not the same as the 401(k) Plan. Thus, Massaro has demonstrated a genuine issue of fact concerning the existence of each element essential to his claim of promissory estoppel regarding the Retirement Plan: (1) an ambiguous promise made by a party

-17-

(Kaiser); (2) the party to whom the promise was made (Massaro) relies upon it; (3) the reliance is expected and foreseeable by the party making the promise (Massaro accepts employment with QSR over Helix); (4) the party to whom the promise is made in fact relies upon it to his injury, and that the reliance was reasonable and justifiable. See M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1408 (7th Cir. 1991) citing Quake Constr., Inc. v. American Airlines, Inc., 141 Ill.2d 281, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990).

Summary judgment is DENIED as to Count VI.[10]

### D. Count VII - Breach of Contract Regarding Retirement Plan

As with Count VI, QSR argues that it is entitled to summary judgment on Count VII because Massaro participated in the existing QSR employee retirement benefit plan and because Massaro cannot rely on the Employee Handbook as it did not apply to him. As discussed above, however, Massaro claims that he was promised that QSR would provide employee retirement benefits in addition to the 401(k) Plan. Further, there is a genuine issue of material fact as to whether the Employee Handbook applied to Massaro. Upon acceptance of employment, Massaro received an Employee Handbook, he received paid vacation according to the terms of the Handbook and Defendants seek to enforce the vacation pay provisions of the Handbook against Massaro, and Kaiser never told anyone not to issue the Handbook to him. Summary judgment is therefore DENIED as to Count VII.

---

[10] QSR further argues that Massaro's promissory estoppel claim is barred by the integration clause of his Employment Agreement and the parol evidence rule. QSR overlooks, however, that Art. II, Sec. 7 of the Employment Agreement clearly states that "Massaro shall be considered a direct employee of the Company and receive benefits as may be due him under the Company's employee benefit programs."

*E. Count VIII and IX - ERISA Claims Regarding Profit Sharing Program*

QSR argues that it is entitled to summary judgment on Counts VIII and IX because the monthly bonus to which these counts refer has never been a retirement plan. QSR further argues that Massaro has the burden of proof in establishing that the discretionary monthly bonuses paid to some QSR employees was an ERISA-governed plan, and he has failed to meet his burden. This Court agrees.

> ERISA defines an employee pension plan as:
>
> any plan, fund or program . . . established or maintained by an employer . . . (which) by its expressed terms or as a result of surrounding circumstances . . . (i) provides retirement income to employees; or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, . . . or the methods of distributing benefits to the plan.

29 U.S.C. § 1002(2)(A). Further, bonus plans, defined as "payments made by an employer to some or all of its employees as bonuses for work performed," 29 C.F.R. § 2510.3-2(c), are not included in this definition. Because the record is devoid of information that would suggest the Profit Sharing Program is an ERISA-governed benefit plan, this Court GRANTS summary judgment in favor of QSR on Counts VIII and IX.

*F. Counts X and XI - Promissory Estoppel and Breach of Contract Regarding Profit Sharing Program*

QSR moves for summary judgment on Counts X and XI, arguing that Massaro's promissory estoppel and breach of contract claims are barred by the integration clause of his Employment Agreement and the parol evidence rule. For the reasons expressed above, see supra note 10, this Court rejects QSR's argument and finds that there are genuine issues of

material fact regarding Counts X and XI. Summary judgment is therefore DENIED as these counts.

### G. Count XII - Fraud

In Count XII of the Amended Complaint, Massaro claims that QSR defrauded him in connection with their unfulfilled promises concerning benefits he would receive upon employment with QSR. As the facts determining the basis of this count are related or essentially the same as the facts surrounding the promissory estoppel and breach of contract claims, this Court finds that there are genuine issues of fact regarding the fraud claim as well. Therefore, summary judgment is DENIED as to Count XII.

### H. Count XIV - Breach of Contract Regarding Compensation Due upon Termination of Employment Agreement

Count XIV is based on Massaro's interpretation of the Employment Agreement. He argues that the Employment Agreement provides for termination upon 30 days written notice, payment to him of one year's base salary, and one year's commissions based on the highest consecutive twelve months of Massaro's employment. These terms, however, are contained in the early termination provision. Massaro further argues that this notice and payment provision is not limited to termination of the Employment Agreement prior to April 1, 2001, but that it also applies when the Employment Agreement terminates on April 1, 2001. Massaro's argument is bizarre. It is true that the Employment Agreement provides that Massaro will work a *minimum* of five years, and the parties could have chosen to extend his employment if they so desired. They did not, however, and the clear meaning of the Employment Agreement is that Massaro's employment would end on April 1, 2001 unless QSR and Massaro agreed otherwise. Massaro's

employment terminated according to the terms of the Employment Agreement and the early termination provision did not apply. Summary judgment therefore is GRANTED in favor of QSR on Count XIV.

*1. Count XV - Violation of the Wage Payment and Collection Act*

As basis for Count XV, Massaro argues that Phil Smith, Chief Operating Officer of QSR, told Massaro that QSR and Massaro would "work something out" in connection with Massaro's inability to take all of his earned vacation prior to December 31 of any calendar year and that this representation constituted an amendment to the QSR Handbook provision that mandated employees to take vacation after the adjustment of January 1 and before December 31 or that same year. The QSR Handbook, however, also clearly stipulates that "no manager or representative of the Company has the authority to enter into an agreement with me, oral or written, that is contrary to the foregoing." Summary judgment, therefore, is GRANTED as to Count XV.

## IV. Conclusion

For the foregoing reasons, the Nationwide Defendants' motion for summary judgment is GRANTED in its entirety. Further, this Court GRANTS in part and DENIES in part the QSR/MED Defendants' motion for summary judgment. Summary judgment is GRANTED in favor of Defendants MED, Skuza, and Kaiser on all counts, and in favor of the QSR on Counts

I, II, IV, V, VIII, IX, XIV, and XV. Summary judgment is DENIED as to QSR on Counts III, VI, VII, X, XI, and XII. In sum, QSR is the only defendant and the remaining counts against it are Counts III, VI, VII, X, XI, XII, and XIII.

Enter:

David H. Coar
United States District Judge

Dated: September 12, 2002